IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROMANIA ANN GADSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:13-cv-1050 |
| ) | |
| SHERIFF JOHN FUSON, ) | Judge Trauger |
| OFFICER [F/N/U] WRIGHT, ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Plaintiff Romania Gadson, a state prisoner serving her sentence at the Montgomery County Jail in Clarksville, Tennessee, has filed a *pro se* complaint under 42 U.S.C. § 1983 (ECF No. 1). The complaint is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PRLA"), 28 U.S.C. §§ 1915(e)(2) and 1915A; 42 U.S.C. § 1997e(c).

**I.      Standard of Review**

Under the PLRA, the court must conduct an initial review of any civil complaint filed *in forma pauperis*, 28 U.S.C. § 1915(e)(2), or brought by a prisoner-plaintiff against government entities or officials, 28 U.S.C. § 1915A, or challenging the conditions of confinement, 42 U.S.C. § 1997e(c). Upon conducting this review, the court must dismiss the complaint, or any portion thereof, that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A; 42 U.S.C. § 1997e(c). The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Although *pro se* pleadings are held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II.     Factual Allegations

The defendants named in the complaint are Montgomery County Sheriff John Fuson, Officer Wright (no first name), and Cpl. Joseph Welch.

The plaintiff alleges that on August 25, 2013, another inmate showed a tattoo located on her "side" to five other inmates, including the plaintiff. The tattooed inmate was in the shower but fully dressed. Nonetheless, all six of the inmates were placed in their cell and given a "write-up." (ECF No. 1, at 6.) The plaintiff alleges that of the five inmates who were caught looking at the tattoo, she was the only person locked down for 120 hours. The other inmates received 72 hours on lockdown. The plaintiff alleges that the reason she received harsher punishment is because she is gay. The plaintiff also claims that she was subsequently placed in a "lockdown pod" where she only gets to come out for two hours a day, and is no longer allowed to work and, consequently, is receiving fewer jail credits, meaning she will serve a longer sentence. In the grievances attached to the complaint, however, the plaintiff concedes that, after she filed a grievance, her lockdown period was lowered to 72 hours like that of the other inmates, though the other inmates were not moved to a lockdown pod. (*See* ECF No. 1-1, at 5 ("My 120 Hour Lockdown got reduced to 72 Hour's like the other 4 people. What I don't understand is why am I being singled out. Of the other 4 people I'm the only one who got moved to L-Pod. This is unfair treatment.").)

In support of her claim of disparate treatment, the plaintiff points to an incident that occurred in September 2013, where one inmate was caught inside another inmate's cell with the door shut. One of the inmates received no punishment at all, and the other inmate received a 48-hour lockdown. According

to the plaintiff, this was a much more serious infraction than being caught looking at another inmate's tattoo while she was (fully dressed) in the shower.

For relief, the plaintiff demands that Sheriff Fuson "[i]mprove[] the staff and explain . . . that all inmates should be treated the same." (ECF No. 1, at 8.) She demands that Officer Wright "take a class about discrimination" and that Cpl. Welch move her back to M-Pod and give her her job back. She seeks $1,000 in damages from each of the latter two defendants. The court infers from these demands that Officer Wright is the officer responsible for meting out punishment for the disciplinary infractions identified in the complaint, and that Cpl. Welch made the decision to move her to the lockdown pod, which resulted in the plaintiff's loss of her job.

### III.    Discussion

The plaintiff seeks to bring suit under 42 U.S.C. § 1983 to vindicate alleged violations of her federal constitutional rights. Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 44 n.3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir. 1996). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

Generally speaking, the plaintiff does not have a constitutional right to any particular housing or placement while imprisoned. *See, e.g.*, *McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (no right to incarceration at any particular prison). Nor does she have a constitutionally recognized right to a job while in prison. *See e.g.*, *Dellis v. Corrs. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (finding that an inmate has no constitutionally protected liberty or property interest in prison employment). Consequently, the loss of these privileges alone does not state a claim under § 1983.

It appears, however, that the plaintiff, in claiming that she was discriminated against, is attempting

to state a claim based on the violation of the Equal Protection Clause. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV. This is essentially a direction that all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against her. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1997). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265–66. In order to be entitled to the strict-scrutiny standard of review for an equal-protection claim, a plaintiff must demonstrate that she was victimized by some suspect classification. *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992). To date, the Sixth Circuit has not recognized homosexuality as a suspect class. *Davis v. Prison Health Servs.*, 679 F.3d 433, 438 (6th Cir. 2012); *but see Bassett v. Snyder*, --- F. Supp. 2d ----, 2013 WL 3285111, at *16 (E.D. Mich. June 28, 2013) (arguing that "[t]he Sixth Circuit's pronouncements on the question are worthy of reexamination").

The plaintiff does not belong to a suspect class, but she does belong to an "identifiable group." *Davis*, 679 F.3d at 441. Consequently, her claim is subject to examination under rational-basis review. *Id.* In this case, the plaintiff alleges facts from which it might be inferred that she was subjected to disparate treatment by officers Welch and Wright, insofar as similarly situated inmates who engaged in the same behavior were treated more favorably than she was, and that there was no rational basis for the disparate treatment. The court finds for purposes of the initial review, that the plaintiff states a colorable equal-protection claim against defendants Welch and Wright.

The plaintiff does not, however, state a colorable claim under § 1983 against Sheriff John Fuson. She does not allege that Sheriff Fuson was personally involved in any of the actions giving rise to her claim. To establish the liability of any individual defendant, the plaintiff must show that that particular defendant was personally involved in the activities giving rise to the plaintiff's claims. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). *See also Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (noting that "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior"). Nor does the fact that Sheriff Fuson has supervisory authority over the corrections officers employed at the jail give rise to liability under § 1983. The Sixth Circuit has stated:

> The law is clear that liability of supervisory personnel must be based on more than merely the right to control employees. Further, a claim of failure to supervise or properly train under section 1983 cannot be based on simple negligence. A failure of a supervisory official to supervise, control, or train the offending individual employees is not actionable absent a showing that the official either encouraged or in some way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved[,] or knowingly acquiesced in the unconstitutional conduct of the offending employees.

*Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989); *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005) ("[P]roof of personal involvement is required for a supervisor to incur personal liability.").

The plaintiff here does not allege that Sheriff Fuson was even aware of the alleged constitutional violation, or that he somehow encouraged or implicitly authorized such behavior. The court therefore finds that the complaint fails to state a claim against Sheriff Fuson. The claims against Fuson will therefore be dismissed under the PLRA.

**V.  CONCLUSION**

For the reasons set forth herein, the court will permit the equal-protection claims against defendants Welch and Wright to proceed, but will dismiss the claims against Sheriff Fuson. An appropriate order is filed herewith.

Aleta A. Trauger
United States District Judge